UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| STEVEN M. STUCHINER, now known as RAFAEL STEVEN STUCHINER, individually and as TRUSTEE of the STEVEN M STUCHINER 1993 ARTICLE III TRUST,<br><br>Plaintiffs,<br><br>v.<br><br>SEDONA OIL AND GAS CORP., an active Texas corporation, KENNETH W. CRIMBLEY, JR., an individual, and JOHN T. CRUMBLEY, an individual,<br><br>Defendants. | Case No. C06-5639-RJB<br><br>1) ORDER ON DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION AND VENUE<br><br>2) ORDER ON DEFENDANTS' MOTION FOR AMENDMENT TO DISCOVERY DEADLINES<br><br>3) ORDER ON DEFENDANTS' MOTION FOR LEAVE TO FILE SURREBUTAL EXHIBITS |

This matter comes before the court on Defendants' Motion to Dismiss for Lack of Jurisdiction and Venue (Dkt.. 4) and other pending motions (Dkt. 5 and 28). The court has considered the pleadings filed in support of and in opposition to the motions and the file herein.

PROCEDURAL HISTORY

In December 2002, plaintiff and defendants executed a Purchase and Confirmation Agreement (collectively referred to as the first agreement), in which plaintiff agreed to pay defendant $150,000 in consideration for a 3% overriding royalty interest in 300 mineral acres. Dkt. 10, Exh. A-B at 25-26. Defendants were to use the money for a seismic geology study. If the study did not result in oil and gas in

ORDER
Page - 1

1  paying quantities, the agreement promised to grant plaintiff working interest in two producing wells. *Id.* at
2  26.  This agreement did not contain an arbitration provision.
3        In early 2003, the parties entered into another agreement through which plaintiff obtained a 25%
4  working interest and 18.75% net revenue interest in oil and gas shares located within 40 acres of a 320
5  acre leasehold known as Cline Well #1.  Dkt. 10, Exhs. C-D.  It is not contested that the 320 acre
6  leasehold referenced in the second agreement is the same as the leasehold referenced in the first agreement.
7  Both the Investor Operating Agreement and the Subscription Agreement (collectively referred to as the
8  second agreement) contain an arbitration provision that reads in part as follows:
9        Any controversy, claim or dispute concerning the offering, purchase of working interest and
          operatorship of the Cline Well #1, or any claims under this Agreement and offering including claims
10       of default, shall be settled by mandatory non-appealable binding arbitration pursuant to the Texas
          Arbitration Act ... The Parties further agree to conduct the arbitration in Dallas County, Dallas,
11       Texas.
12  Dkt. 10, Exh. D,  at 45.
13        After defendants determined that it would not be economic to extract oil and gas at Cline Well #1,
14  the parties entered a further agreement, referred to as the third agreement, in which Defendants assigned
15  substitute shares in oil and gas interests to plaintiff. Dkt. 10, Exh. F at 49.  This agreement, referred to as
16  the June 2003/April 3004 Agreement, did not contain an arbitration provision.
17        On November 2, 2006, plaintiff filed this civil action alleging violations of federal and state
18  securities laws, violation of the Washington Consumer Protection Act, fraud, breach of contract, and other
19  contractual claims. Dkt. 1.  All of the claims asserted in the original complaint related to all three of the
20  contracts mentioned above.
21        On December 18, 2006, defendants filed a motion to dismiss for lack of jurisdiction and venue.
22  Dkt. 4.  On December 20, 2006, defendants also filed a motion for amendment of discovery deadlines in
23  which they requested the court to stay discovery under Rule 26 and Rule 34 until after the Motion to
24  Dismiss had been resolved. Dkt. 5.
25        On January 8, 2006, plaintiff filed an amended complaint. Dkt. 10.
26        On January 25, 2006, defendant filed a motion for leave to file surrebutal exhibits. Dkt. 28.
27                                        MOTION TO DISMISS
28        Defendants contend that this action should be dismissed because the arbitration provision contained

in the second agreement binds the parties to resolve this matter in arbitration. Plaintiff opposes the motion on two grounds. First, plaintiff asserts that the arbitration provision contained in the second agreement is narrow and therefore not applicable to actions contesting the validity of the second agreement. Second, plaintiff asserts that, even if the arbitration provision is applicable to actions contesting the validity of the second agreement, the provision does not apply to every claim asserted in the complaint since several claims relate to contracts separate and distinct from the second agreement.

## LEGAL STANDARD

It is proper for a district court to compel arbitration only if a valid arbitration agreement exists and is applicable to the dispute at issue. A party to a valid arbitration agreement may "petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The court has little discretion under section 4 of the Federal Arbitration Act. The court must order the parties to proceed to arbitration in accordance with the terms of their agreement if it requires arbitration. See *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). The district court's limited role is to first determine whether a valid arbitration agreement exists. If a valid arbitration agreement exists, the court must also determine whether the agreement is applicable to the dispute at issue. If the agreement exists and applies to the dispute at issue, the court must enforce the agreement. See *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

Agreements to arbitrate claims are enforced even when arbitrable issues are intertwined with nonarbitrable issues. *Dean Witter Reynolds* at 221. The Court in *Dean Witter Reynolds* held that the Federal Arbitration Act " requires that we rigorously enforce agreements to arbitrate, even if the result is 'piecemeal' litigation." *Id.* at 221.

## DISCUSSION

Defendants argue that the arbitration clause contained in the second agreement covers the current litigation and therefore binds the parties to resolve this dispute by arbitration in Texas. Plaintiff contends that the arbitration clause contained in second agreement is a narrow arbitration clause that allows the action to be litigated in federal court. Furthermore, plaintiff contends that the absence of an arbitration clause in the first and third agreements, at a minimum, allows litigation in this court concerning the claims arising under those contracts.

**1. Scope of Arbitration Provision**

Arbitration clauses vary in breadth. While some arbitration clauses cover nearly all litigation relating to a contract, others apply only to disputes relating to interpretation of a contract. The Ninth Circuit distinguishes between such broad and narrow arbitration provisions. *See e.g. Tracer Research Corp v. National Environmental Services Co.*, 42 F.3d 1292 (9th Cir. 1994); *Mediterranean Enterprises v. Ssangyong Corp.*, 708 F.2d 1458 (9th Cir. 1983). In *Mediterranean Enterprises*, the court held that the omission of the words "relating to" in an arbitration agreement was "significant." *Id.* at 1464. The contested arbitration agreement used the language "arising under" but omitted "relating to." *Id.* The court concluded that, because of the omission, the arbitration provision covered only "disputes and controversies relating to the interpretation of the contract and matters of performance." *Id.* Contrary to the plaintiff's assertion, the omission of the phrase "relating to" does not absolutely lead to the conclusion that the arbitration provision should be read narrowly. The omission was of improtance in *Mediterranean Enterprises* because it was a deviation from the standard clause suggested in the U.S./ Korean Commercial Arbitration Agreement. *Id.* In addition, the arbitration agreement in *Mediterranean Enterprises* did not contain any further language referring to its scope.

The second agreement is the only agreement that contains an explicit arbitration provision. The provision is applicable to "any controversy, claim or dispute <u>concerning</u> the offering, purchase or working interest and operatorship of the Cline Well #1, or any claims <u>under</u> this agreement." Dkt. 10, Exh. D at 45 (emphasis added). The phrase "any claims under this agreement" is equivalent to the phrase "arising under" used in *Mediterranean Enterprises*. In addition, unlike *Mediterranean Enterprises*, the agreement also applies to claims or disputes "concerning the offering, purchase or working interest and operatorship...." The addition of the extra phrase referring to the scope of the arbitration agreement was clearly meant to expand the scope of the provision beyond that of a narrow arbitration provision. The arbitration provision contained in the second agreement is not a narrow arbitration provision and is therefore applicable to challenges of the validity of that contract.

**2.      Related Agreements**

Arbitration provisions may also be applied to related agreements that do not contain an arbitration provision. *International Ambassador Programs v. Archexpo*, 68 F.3d 337 (9th Cir. 1993). The general

rule is that related agreements that are discrete are not subject to the arbitration agreement, while the arbitration agreement is applicable to a related agreement when all the agreements are interrelated contracts in an ongoing series of transactions. *Id.* at 339-40.

Neither the first agreement nor the third agreement contain, in themselves, an arbitration provision. However, neither agreement is distinct and separate from the second agreement. The language of the arbitration provision in the second agreement covers all claims "concerning the offering, purchase of working interest, and operatorship of the Cline Well #1." Dkt. 10, Exh. D at 45 (emphasis added). All these agreements are therefore subject to the arbitration provision.

The phrase 'Cline Well #1' is not used specifically used in the first agreement. The first agreement conveyed "an overriding royalty interest of Three (3%) percent in and to the above-described leases." Dkt. 10, Exh. A at 25. The "above-described leases" were "Oil and Gas leases covering approximately 300 mineral acres" in Houston County, Texas. *Id*. Because the Cline Well #1 was not referenced by name in the first agreement, the plaintiff argues that the arbitration provision contained in the second agreement is not applicable to the first agreement.

The Cline Well #1 is a forty acre leasehold tract situated within a three hundred and twenty acre lease in Houston County, Texas. Dkt. 27 at 8. It was contained within the land described in the first agreement. Accordingly, when the first transaction conveyed a three-percent working interest in the entire 320 acres, it also conveyed a working interest in the underlying Cline Well #1 and thus is within the scope of the language used in the second agreement's arbitration provision.

This conclusion is further supported by the temporal proximity of the first and second agreements. Little more than one month lapsed between the signing of the two agreements. Since the same underlying property was the subject of the two agreements, it also appears that the two agreements were in fact part of one larger agreement. Consequently they are both subject to the arbitration provision.

The third agreement is also a related contract. The operative language in the agreement is "From your memo dated 02/14/2004, you stated that you agreed to *substitute* two other wells comparable to the Cline Well. Sedona is agreeing to that in the above mentioned wells." Dkt. 10, Exh. E at 49 (emphasis added). This language demonstrates that the third agreement was not meant to supersede the second agreement, but instead was meant to substitute for the wells were contained in the earlier agreement. As

such, the third agreement was not discrete and the arbitration agreement contained in the second agreement is applicable to it under the test set forth in *International Ambassador Programs*.

All the agreements are part of interrelated contracts in an ongoing series of transactions and all the agreements fall within the scope of the arbitration provision. Therefore, all the agreements are subject to the arbitration provision contained in the second agreement.

### 3. Validity of Arbitration Agreement

Even if the arbitration clause covers the issues in this case, the validity of the arbitration agreement may be challenged. However, it must be properly challenged. When the validity of a contract as a whole is challenged, the contract's arbitration agreement is not invalidated. *Buckeye Check Cashing, Inc. v. Cardegna*, 126 S.Ct. 1204, 1208 (2006). Federal courts will send a dispute to arbitration where the causes of action or claims within a complaint are an effort to invalidate the entire contract. *Nagrampa v. Mailcoups, Inc.*, 2006 U.S. App. LEXIS 29687, *24 (2006). The court in *Nagrampa* analyzes the validity of the arbitration provision at issue there, but only because the heart of the plaintiff's complaint was a challenge to the arbitration provision itself. *Id.* at *2-*4.

Because the arbitration provision applies to all three agreements underlying the complaint, the only remaining issue the court may consider is the validity of the arbitration provision contained in those agreements. The plaintiff's amended complaint is an effort to invalidate the entire contract, not only the arbitration provision. None of the claims specifically attack the arbitration provision. Therefore, as in *Buckeye Check Cashing*, all claims relating to the contracts must be determined through arbitration.

### 4. Conclusion

Based upon the foregoing analysis, all claims against the defendant should be dismissed without prejudice, in accord with the arbitration provision contained in the second agreement.

### 5. Motion for Amendment to Discovery Deadlines

The motion for amendment of discovery deadlines (Dkt. 5) is moot because the claims against the defendant are being dismissed.

### 6. Motion for Leave to File Surrebutal Exhibits

Defendant's motion for leave to file surrebutal exhibits (Dkt. 8) deadlines should be granted.

Therefore, it is hereby **ORDERED** that defendants motion to dismiss (Dkt. 4) is **GRANTED** and all claims are **DISMISSED** without prejudice.

It is further **ORDERED** that the motion for amendment of discovery deadlines (Dkt. 5) is **DENIED** as moot.

It is further **ORDERED** that the motion for leave to file surrebutal exhibits (Dkt. 28) is **GRANTED**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record via the CM/ECF system and to any party appearing *pro se* at said party's last known address via the U.S. Mail.

DATED this 25th day of January, 2007.

Robert J. Bryan
United States District Judge