UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| STEVEN M. STUCHINER, now known as RAFAEL STEVEN STUCHINER, individually and as TRUSTEE of the STEVEN M STUCHINER 1993 ARTICLE III TRUST,<br><br>Plaintiffs,<br><br>v.<br><br>SEDONA OIL AND GAS CORP., an active Texas corporation, KENNETH W. CRIMBLEY, JR., an individual, and JOHN T. CRUMBLEY, an individual,<br><br>Defendants. | Case No. C06-5639-RJB<br><br>ORDER DENYING MOTION FOR RECONSIDERATION |

This matter comes before the court on plaintiff's Motion for Reconsideration. Dkt. 31. The court has considered the documents filed in support of the motion and the file herein.

In this action, the court granted Defendants' motion to dismiss for lack of jurisdiction and venue. Dkt. 299. Judgment was entered January 25, 2007. On February 8, 2007, Plaintiff timely filed a Motion fo Reconsideration.

Local Rule CR 7(h) provides in relevant part as follows:

Motions for reconsideration are disfavored. The court will ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence.

In this motion, Plaintiff cites five grounds upon which manifest error is alleged. On each ground, Plaintiff fails to demonstrate a manifest error in this court's prior ruling.

ORDER
Page - 1

**1.     Venue Selection Clause**

Plaintiff first claims that enforcing the venue selection clause in the arbitration provision is against public policy. To support his contention, Plaintiff cites a Texas Supreme Court decision in which the court refused to entertain claims brought under the antitrust laws of neighboring states. *The Coca-Cola Company v. Harmar Bottling Co.*, 2006 WL 2997436 (Tex. 2006). The *Coca-Cola* decision is not broad enough to provide sufficient support to Plaintiff's argument as it was narrowly tailored to the intricacies of state antitrust laws. The court noted, for example, that "varying times and circumstances give antitrust law changing content. We do not think that the courts of one state should determine for another state the economic theory and social needs and values that provide content to its antitrust laws." *Id.* at *9.

Furthermore, the *Coca-Cola* decision does not concern an arbitration agreement. The court only addressed the issue of venue in a civil proceeding. In the present action, the issue is the proper venue for an arbitration proceeding, when an arbitration clause was provided for, and agreed to, in a contract.

Here, the parties have explicitly agreed to arbitration in Texas. Since that agreement is not against public policy, it should be enforced.

**2.     Individual Defendants**

In its Order, the Court did not specifically address the issue of whether the arbitration provision required Plaintiff to arbitrate his tort claims against Defendants Kenneth Crumbley and John Crumbley. Plaintiff states that, since neither defendant was a party to the contract, the language of the arbitration prevision should not apply to them. The court does not agree.

As the Plaintiff notes in his motion, federal courts have held that employees not a party to a contract containing an arbitration provision may nonetheless compel arbitration if the claims against them fall within the scope of an arbitration provision in a contract between the plaintiff and the employer. *See, e.g. Letizia v. Prudential Bache Securities*, 802 F.2d 1185 (9th Cir. 1986). Underlying the analysis of this case is the general rule that arbitration clauses are interpreted under the law of contract and agency. *Id.* at 1187.

In *Letizia*, the defendant brokerage firm required the plaintiff to sign the firm's standard agreement when the plaintiff opened a securities account with the firm. *If.* at 1186. The agreement provided for arbitration of any dispute arising out of or relating to the plaintiff's securities account. *Id.* The plaintiff

later sued alleging fraud and violation of federal securities laws. The court held that, based on the law of contract and agency, the plaintiff was bound to the arbitration agreement with respect to the employees, even though they were nonsignatories to the agreement. *Id.* at 1188.

Similar to *Letizia*, the language of the agreement in this case was broad and encompassed "any Controversy, claim or dispute concerning the offering, purchase of working interest and operatorship of the Cline Well #1..." Dkt. 10, Exh. D at 45. Kenneth Crumbley also signed the agreement. Dkt. 10, Exhs. B-E. Nothing in the record shows that Kenneth or John Crumbley acted in any capacity other than as agents of Sedona. The agreements therefore encompass claims against Kenneth and John Crumbly in their role as officers of Sedona.

**3.     Ninth ClaimFor Relief**

In reaching its decision, the Court noted that "None of the claims specifically attack the arbitration provision." Dkt. 29 at 6. Plaintiff alleges that his Ninth Claim for Relief specifically seeks to invalidate the arbitration provision, thus allowing this court to inquire into the validity of the arbitration provision, as was done in *Nagrampa v. Mailcoups, Inc.*, 2006 LEXIS 29687 (9th Cir. 2006).

The Ninth Claim for Relief in fact challenges the validity of all three agreements and seeks to invalidate the arbitration provision indirectly. Plaintiff did not allege that any action specifically induced him into agreeing to the arbitration provision; the complaint only alleges that Plaintiff was induced into agreeing to the whole agreement. As such, the Ninth Claim for Relief does not specifically seek to invalidate the arbitration provision.

Furthermore, the heart of Plaintiff's complaint is not a challenge to the arbitration provision itself. This is supported by the fact that remaining claims for relief seek, in general, to invalidate the complete agreement. Accordingly, as in *Buckeye Check Cashing, Inc. V. Cardegna*, 126 S.Ct. 1204 (2006), the validity of the arbitration provision may not be challenged.

**4.     Applicability To Other Agreements**

Plaintiff asserts that the arbitration provision contained in the Second Agreement should not be applicable to the First and Third Agreements. His chief argument in this motion relied on the holding in the recently decided *Goodrich Cargo Systems v. Aero Union Corp.*, 2006 WL 3708065 (N.D.Cal. 2006). In that case, the claims related to contemporaneously signed agreements consisting of one umbrella

ORDER
Page - 3

agreement and several schedules and attachments. *Id.* at *3. The court held that an arbitration Provision contained in one attachment was not applicable to the remaining agreements. *Id.* Rather than holding that one arbitration provision could never be applicable to all the agreements, the court state that "If the parties ... had wanted to arbitrate any dispute arising out of their integrated economic transaction, they should have placed an arbitration clause in the umbrella agreement." *Id.* In the present case, the arbitration provision was contained in the Second Agreement. Looking at both the subject matter and the length of the Second Agreement, it is clear that the Second Agreement plays a larger role in the overall agreement than did the attachment containing the arbitration provision in *Goodrich Cargo System*. Therefore, the reasoning in *Goodrich Cargo System* is not applicable to the present case.

The court in *Goodrich Cargo Systems* also found that the plain language of the clause confined the arbitration provision to the single agreement. The relevant clause stated that the parties must submit to arbitration "all disputes, claims and controversies that arise under or relating any way to *this Agreement*." *Id.* (emphasis in the original). In this case, the relevant arbitration provision is applicable to "Any Controversy, claim or dispute concerning the offering, purchase of working interest and operatorship of the *Cline Well #1* or any claims under this Agreement and offering including claims of default..." Dkt. 10, Exh. D at 45 (emphasis added). Unlike the language used in *Goodrich Cargo Systems*, the plain language of the provision does not confine its applicability to the Second Agreement. Instead, the plain language applies the arbitration provision to other agreements relating to the Cline Well property. Again, Plaintiff has failed to demonstrate manifest error in the court's prior judgment.

**5.      Scope of Arbitration Provision**

Plaintiff also alleges that the court wrongly determined that the arbitration provision should be interpreted broadly. In *Mediterranean Enterprises v. Ssangyong Corp.*, 708 F.2d 1458 (9th Cir. 1983), the Ninth Circuit interpreted an arbitration provision omitting the phrase "relating to" as narrow. In its January 25, 2007 order, this Court found it significant that the parties in *Mediterranean Enterprises* had deviated from the language of the standard broad arbitration provision in the US/Korean Commercial Arbitration Agreement. Plaintiff argues that the court failed to recognize two cases cited by Plaintiff which represent typical oil and gas operating agreements. *See Pennzoil Exploration v. Ramco Energy*, 139 F.3d 1061 (5th Cir. 1998); *In re Great Western Drilling*, 206 WL 3461801 (Ct.App.Tx. 2006).

The Court's decision should not be interpreted as stating that any deviation from standard language should be interpreted as narrowing the arbitration provision. In *Mediterranean Enterprises*, the deviation from standard language was a significant factor in the decision because key language was omitted from the arbitration provision, thus narrowing the scope of the provision. In the present case, the arbitration provision materially differed from the arbitration provisions contained in *Pennzoil* and *great Western Drilling*. Rather than an omission of certain words, the arbitration provision itself was different and even contained added phrases. Such a change requires the court to look at the arbitration provision in its entirety in order to determine its scope. Looking for the presence or omission of specific words will not accurately determine the scope of the arbitration provision. After viewing the entirety of the arbitration provision, the court concludes that the arbitration provision should be interpreted broadly.

**6.  Conclusion**

Based on the foregoing analysis, the Court's Order on Defendant's Motion to Dismiss (Dkt. 29) should not be reconsidered.

Therefore, it is hereby

**ORDERED** that plaintiff's Motion for Reconsideration (Dkt. 31) is **DENIED**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record via the CM/ECF system and to any party appearing *pro se* at said party's last known address via the U.S. Mail.

DATED this 13th day of February, 2007.

Robert J. Bryan
United States District Judge